UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE SLOWINSKI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 24 CV 5421 |
| v. | Judge Thomas M. Durkin |
| DRIP DROP HYDRATION, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Christine Slowinski brings this putative class action against Drip Drop Hydration, Inc. alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, common law fraud, and unjust enrichment. Before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 8. For the following reasons, the motion is granted in part and denied in part.

### Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, the complaint must provide the defendant with "fair notice" of the claim and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is

1

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (citations omitted). In deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

In addition, a party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). To meet this particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). But the Seventh Circuit has "warned that courts and litigants often erroneously take an overly rigid view of the formulation" and that "[t]he precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). At bottom, to satisfy the Rule 9(b) particularity standard, "[i]t is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Rolls-Royce*, 570 F.3d at 854–55 (citations omitted).

**Background**

Defendant sells oral rehydration solution ("ORS") powdered drink mixes throughout Illinois and the United States. R. 1-1 ¶ 5. The product labeling for eight of the flavors (hereinafter, the "Products") states "No Artificial Preservatives." *Id.* ¶ 6. However, the Products contain citric acid, which "acts as a preservative when added to food products, including the Products at issue."[1] *Id.* ¶¶ 6, 14. Commercial food manufacturers, including Defendant, use heavy chemical processing to extract the citric acid from a type of black mold called *Aspergillus niger*, leaving behind residue of chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons. *Id.* ¶ 12. Defendant puts citric acid produced by this process in the Products. *Id.* ¶¶ 12, 14.

On February 3, 2024, relying on the "No Artificial Preservatives" descriptor, Plaintiff purchased one of the Products from a CVS in Schaumberg, Illinois. *Id.* ¶¶ 21–22. Plaintiff brings this class action lawsuit alleging Defendant misled her and other consumers by marketing the Products as containing "No Artificial Preservatives." Plaintiff asserts claims for violation of the ICFA (Count I), common law fraud (Count II), and unjust enrichment (Count III). *Id.* ¶¶ 56–75.

---

[1] As alleged, the products also contain sodium citrate, potassium citrate, and magnesium citrate, which are also preservatives. R. 1-1 ¶ 20. However, because the complaint and the briefing focus on the use of citric acid as a preservative, the Court considers citric acid to be the preservative at issue.

**Discussion**[2]

I.     **Rule 9(b)**

Defendant contends that all of Plaintiff's claims are subject to Rule 9(b) because Plaintiff "allege[s] a unified course of fraudulent conduct." R. 9 at 13. Claims "premised upon a course of fraudulent conduct" implicate Rule 9(b). *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007). All of Plaintiff's claims sound in fraud and are analyzed under the heightened pleading standard set forth in Rule 9(b). *See also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (ICFA deceptive practices claims subject to Rule 9(b)); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (fraud claims subject to Rule 9(b)).

Defendant argues Plaintiff does not adequately plead the "what" and the "how" of her claims. Specifically, Defendant argues Plaintiff does not identify which particular product she purchased or how the "No Artificial Preservatives" statement is misleading.

As to the "what," Plaintiff defines the eight flavors of Defendant's ORS products that allegedly contain citric acid as the "Products," and then alleges she purchased "a Product" with the deceptive label. R. 1-1 ¶¶ 6, 21. Although Plaintiff does not indicate exactly which flavor(s) she purchased, she alleges she purchased at least one of the flavors that contains citric acid and that they have the same allegedly

---

[2] Defendant asks the Court to take judicial notice of documents produced by the U.S. Food and Drug Administration ("FDA") and the U.S. Department of Agriculture ("USDA"), and a publication from Virginia Cooperative Extension. R. 8-1. Plaintiff does not oppose this request. Accordingly, the Court takes judicial notice of these documents without converting this motion to dismiss into a motion for summary judgment. *See Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

4

misleading statement. This provides adequate notice of the "what" of the alleged fraud. Adopting Defendant's argument would require the "overly rigid view" of Rule 9(b) cautioned against by the Seventh Circuit. *Camasta*, 761 F.3d at 737.

Defendant further contends Plaintiff inadequately alleges "how" the supposed unlawful statement is misleading because reasonable consumers would understand a dry powder does not need preservatives and the citric acid does not function as a preservative here. R. 9 at 14. As explained below, Plaintiff has sufficiently alleged how reasonable consumers may be misled by Defendant's statement here and determining the necessity and functionality in-fact of the citric acid at the motion to dismiss stage is inappropriate.

Given this is Defendant's only argument to dismiss the common law fraud claim, the motion to dismiss Count II is denied.

## II. ICFA

Next, Defendant argues Plaintiff has not plausibly alleged an ICFA claim. The ICFA prohibits the use of "unfair or deceptive acts or practices." 815 ILCS 505/2. "To plead a deceptive practices claim under the ICFA, a private plaintiff must allege: (1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart, Inc.*, 107 F.4th 585, 598 (7th Cir. 2024) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (2002)).

5

Defendant contends Plaintiff does not adequately plead a deceptive practice because she has not alleged facts that suggest the citric acid functions as a preservative in the Products or that the "No Artificial Preservatives" label misleads a reasonable consumer. Defendant also argues Plaintiff fails to sufficiently allege actual damages. The Court addresses each argument in turn.

A. <u>Deceptive Practice</u>

"Where, as here, the alleged deceptive practice involves misleading labels, the ICFA requires plaintiff to allege plausibly that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Kahn*, 107 F.4th at 598 (internal citations and quotations omitted). What matters is how reasonable consumers "understand and react to the advertising," which is often a question of fact. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476, 479 (7th Cir. 2020). However, a court may dismiss an ICFA claim if the deceptive statement is not misleading as a matter of law— meaning the plaintiff's interpretation of the labels or advertising is "unreasonable and fanciful," and thus implausible on its face. *Id.* at 477.

Plaintiff has plausibly alleged that a label reading "No Artificial Preservatives" is likely to deceive reasonable consumers into believing that the Products do not contain artificial preservatives, including citric acid. Plaintiff's interpretation is also not implausible. Plaintiff alleges she relied on the statement when making her purchase and that other reasonable consumers would understand that products

6

labeled as containing "No Artificial Preservatives" will not contain any artificial preservatives. R. 1-1 ¶¶ 22–23. This, Plaintiff alleges, is because reasonable consumers interpret "artificial preservative" in common parlance to mean a chemical produced by humans to delay food decay, and the citric acid used here is just that. *Id.* ¶¶ 11–12, 14, 24–25. Plaintiff further alleges that statements on labels are material to a reasonable consumer's decision to purchase a certain product, especially those consumers seeking out "free-from" foods. *Id.* ¶¶ 26–27. These facts permit the reasonable inference that a significant portion of the general consuming public or of targeted consumers could be deceived by Defendant's labeling.

Defendant nonetheless contends that the complaint falls short. Defendant first argues that Plaintiff alleges no facts demonstrating the citric acid functions as a preservative in the Products or that the Products require preservatives. R. 9 at 2, 8–11; R. 14 at 7.[3] And nor could she, Defendant contends, because the "water activity level" of the ORS powders is so low such that no preservatives are needed to extend the product's shelf life. R. 9 at 4, 8. But, in reviewing a motion to dismiss, the Court must accept all well-pleaded allegations as true. And here, Plaintiff alleges that the Products contain citric acid, and that the citric acid "acts as a preservative when added to food products, including the Products at issue." R. 1-1 ¶¶ 6, 12, 14. These are factual allegations, not legal conclusions, so the Court accepts them as true. Moreover, even if Defendant is correct that the citric acid does not function as a preservative in the Products, "a statement that is literally true can still be

---

[3] Defendant does not argue Plaintiff has not plausibly alleged the citric acid is artificial.

7

misleading." *Daly v. FitLife Brands, Inc.*, No. 22-CV-00762, 2023 WL 6388112, at *7 (N.D. Ill. Sept. 28, 2023).

Defendant also argues that Plaintiff has not plausibly alleged the label is misleading. First, Defendant contends "[r]easonable consumers understand that [its] products consist of dry powder" with low moisture levels and "an ingredient that may work as a preservative in foods with a high water activity would not have any preservative tendency in products with a low water activity." R. 9 at 8. This assumes too much of the average consumer. A consumer would need to review the Code of Federal Regulations, FDA guidance, USDA studies, and more to come to this understanding, which is inconsistent with the reasonable consumer standard. *Cf. Bell*, 982 F.3d at 482 ("[A]verage consumers are not likely to be aware of the nuances of the FDA's regulations defining 'grated cheese.'"). Additionally, a consumer's understanding is a question of fact and should not be decided on a motion to dismiss, unless the plaintiff's interpretation is implausible on its face, *id.* at 477, 481, which the Court finds it is not here.

Second, according to Defendant, the statement is not misleading because it is located on the same side of the packaging where citric acid is listed as an ingredient and on the adjacent panel containing the nutrition facts. R. 9 at 10–11; R. 14 at 12. But this is equally unavailing. The Seventh Circuit has held that "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Bell*, 982 F.3d at 476; *see also id.* at 494 (Kanne, J., concurring) ("[I]t's simply a stretch to say that a consumer's

8

reading of a statement is implausible as a matter of law just because fine print elsewhere on the label could clarify an ambiguity that a reasonable consumer might not have even noticed in the first place.").

Furthermore, the Court is unpersuaded by Defendant's reliance on *Tarzian v. Kraft Heinz Foods Company*, No. 18 C 7148, 2019 WL 5064732 (N.D. Ill. Oct. 10, 2019), and *Hu v. Herr Foods*, 251 F. Supp. 3d 813 (E.D. Pa. 2017). These cases do not hold that a plaintiff must establish, beyond well-pled factual allegations, *how* or *whether* an ingredient functions as a preservative to survive a motion to dismiss. Instead, they suggest that a plaintiff must allege the ingredient functions to preserve the product, which Plaintiff has done here. *See, e.g.*, R. 1-1 ¶ 14.

These cases are also distinguishable. In *Tarzian*, the plaintiff detailed the industry practice of producing citric acid before concluding the defendant's citric acid was artificial. 2019 WL 5064732, at *4. There, the court found it was "too great of an inferential leap" to draw a connection between industry practice and defendant's actual practice. *Id.* Here, Plaintiff describes how commercial food manufacturers, "including Defendant," produce and add citric acid to their products. R. 1-1 at ¶ 12.

In *Hu*, the court dismissed plaintiff's complaint alleging the defendant mislabeled its products with the phrase "No Preservatives Added," even though they contained citric acid. 251 F. Supp. 3d at 821. There, "it [was] unclear whether [the plaintiff had] squarely alleged that citric acid [did] function as a preservative" in the food products at issue because the complaint contained only allegations about "other uses" of citric acid, which required a "chain of speculative assumptions [that] is

9

simply too attenuated" to survive dismissal. *Id.* at 822. Conversely, Plaintiff here alleges that citric acid acts as a preservative in the Products. R. 1-1 ¶¶ 11, 12, 14.

B. Actual Damages

Although Plaintiff adequately alleges a deceptive practice, she fails to sufficiently plead actual damages, which warrants dismissal of her ICFA claim. To plead actual damages, a plaintiff must allege "actual pecuniary loss." *Kim v. Carter's, Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). "[A]ctual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* (quoting *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 628 (2008)).

In order to plausibly allege actual damages under the ICFA, plaintiffs must allege facts about the actual value of the merchandise, the price of comparable products, and that a better price exists in the marketplace, or a comparison of the position plaintiff would have been in absent the alleged fraud with the position she was in as a result of her reliance on defendant's representation. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019); *Camasta*, 761 F.3d at 739; *Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1041–43 (N.D. Ill. 2017) (explaining that a "measurable criteria" for the comparison plaintiff would be in with versus without the alleged fraud would allege actual damages); *Jackson v. SFC Glob. Supply Chain, Inc.*, No. 20-cv-1072-DWD, 2021 WL 3772696, at *3 (S.D. Ill. Aug. 25, 2021) (finding plaintiff adequately plead theory of damages by claiming he paid more

10

for the pizza than he otherwise would have and that he would not have purchased the pizza at all had they known the label was false).

Plaintiff does not adequately allege any such facts. Plaintiff merely alleges that, because of the misleading labeling, Plaintiff and the putative class members "paid a price premium" for Defendant's products, and that she did not receive "the benefit of the bargain" she paid for because of the allegedly fraudulent labeling. R. 1-1 ¶¶ 31, 32. These highly generic allegations are insufficient. Plaintiff's complaint that "she expected to receive something more than what she got, in and of itself, does not constitute actual damages." *Stemm v. Tootsie Roll Indus., Inc.*, 364 F. Supp. 3d 734, 743 (N.D. Ill. 2019). Given that actual damage is a necessary element of the ICFA, Defendant's motion to dismiss Count I is granted.

### III. Unjust Enrichment

Plaintiff acknowledges that her unjust enrichment claim rises and falls with her ICFA claim. R. 13 at 15–16; *see also Clearly v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stands or fall with the related claim."). Because Plaintiff fails to state an ICFA claim, she also fails to state an unjust enrichment claim. Defendant's motion to dismiss Count III is granted.

### IV. Leave to Amend

Plaintiff requests leave to file an amended complaint. R. 13 at 16. Federal Rule of Civil Procedure 15(a)(2) provides that the Court "should freely give leave [to amend

11

a pleading] when justice so require." Leave to file an amended complaint should be granted so long as it is not sought for reasons such as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).

Defendant argues leave to amend would be futile because Plaintiff cannot allege that citric acid acts as a preservative in Defendant's products. R. 14 at 15. But this argument is moot. *Supra* Part II.A. Defendant does not argue that amendment would be futile with respect to actual damages, which is the deficiency identified in the complaint. Therefore, Plaintiff's request for leave to amend is granted.

## Conclusion

For the reasons stated above, Defendant's motion to dismiss (R. 8) is granted in part and denied in part. The ICFA and unjust enrichment claims are dismissed without prejudice. Plaintiff has leave to file an amended complaint by March 11, 2025.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: February 18, 2025