**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHRISTINE SLOWINSKI individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:24-cv-05421 |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| DRIP DROP HYDRATION, INC. | **JURY DEMANDED** |
| Defendants. | |

Now come the Plaintiff, Christine Slowinski ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her First Amended Class Action Complaint against the Defendant, Drip Drop Hydration Inc. ("Defendant"), Plaintiffs allege and state as follows:

<u>PRELIMINARY STATEMENT</u>

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, and unjust enrichment resulting from the illegal actions of Defendants, in intentionally labeling their Products as containing no artificial preservatives, when they contain the preservatives citric acid,  sodium citrate, potassium citrate, and magnesium citrate. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

2.     Plaintiff is an individual who was at all relevant times residing in Schaumberg, Illinois. Plaintiff purchased the Products during the class period in Illinois.

3.     Defendant is a Delaware corporation, whose principal place of business is located in San Leandro, California.

4.     At all times relevant hereto, Defendants were engaged in the marketing and sale of drink mix products.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because Defendant removed this case alleging that the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendant.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the original claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

7.     Defendants advertise, market, sell, and distribute drink mix products throughout Illinois, and the United States.

8.     During the Class Period Defendants sold the following DripDrop drink mix products (the "Products") labeled, marketed, and sold with the label "No Artificial Preservatives" but which actually contained citric acid, sodium citrate, potassium citrate, and magnesium citrate:

    a)  Berry flavor;

    b)  Lemon flavor;

    c)  Orange flavor;

    d)  Watermelon flavor;

    e)  Zero Sugar Watermelon flavor;

    f)  Zero Sugar Peach flavor

    g)  Zero Sugar Lemon Lime flavor;

    h)  Zero Sugar Pasion Fruit flavor;

9.    The United Stated Food and Drug Administration ("FDA") defines the term chemical preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22.

10.    Citrate salts are all produced by a chemical reaction between citric acid and a hydroxide or carbonate of the respective salt, such as sodium, potassium, or magnesium.[1]

11.    Citrate salts are chemically modified salts of citric acid and are added to foods to retard the deterioration thereof by preventing microbial growth and survival to extend the shelf life of consumer food products.[2]

12.    In basic terms, citrate salts extend the shelf-life of the Products by creating an environment inhospitable to bacteria growth.

13.    Based on the forgoing allegations, citrate salts are artificially produced chemicals that retard the deterioration consumer products. Therefore, Defendants use citrate salts that are artificial chemical preservatives in the Products.

---

[1] Citric Acid and Salts handling and processing, https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf
[2] Liyan Liu et al., Inhibitory effects of two types of food additives on biofilm formation by foodborne pathogens, 2019, MicrobiologyOpen Wiley & Sons ltd

3

14. Defendants use artificial citric acid in the Products. Many commercial food manufactures, including Defendants, use a synthetic form of citric acid that is derived from heavy chemical processing.[3] Commercially produced citric acid is manufactured using a type biologically engineered black mold called *Aspergillus niger*.[4] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract citric acid from aspergillus niger fermentation liquor.[5] Citric acid produced through chemical solvent extraction contains residues of those chemical solvents. Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[6]

15. In warning letters sent to Oak Tree Farm Dairy, Inc. and the Hirzel Canning Company, the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because adding citric acid to the products precluded the use of the term "natural" to describe the products.[7]

---

[3] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[4] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[5] 21 CFR 173.280

[6] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[7] See Exhibits A and B attached hereto

4

16.     Citric acid acts as a preservative when added to food products, including the Products at issue. The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[8]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

17.     In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[9]

18.     The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties, as shown below[10]:

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| Food preservatives | |
|---|---|
| chemical agent | mechanism of action |
| **Antioxidants** | |
| ascorbic acid | oxygen scavenger |
| butylated hydroxyanisole (BHA) | free radical scavenger |
| butylated hydroxytoluene (BHT) | free radical scavenger |
| citric acid | enzyme inhibitor/metal chelator |
| sulfites | enzyme inhibitor/oxygen scavenger |

[8] O avai

[10] Preser

ION,
food-

:f502211

19.     The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[11]

20.     The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[12]

21.     Several academic journals also note the use of citric acid as a preservative.[13] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[14] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[15]

22.     Citric acid, sodium citrate, potassium citrate, and magnesium citrate are preservatives in the Products regardless of whether Defendants intended to use them as

---

[11] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

[12] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

[13] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets,* WORLD'S POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[14] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[15] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

preservatives. Preservatives maintain the same food deterioration retardant properties even if they are also added to the Products for some other use. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[16]

23.     On February 3, 2024, Plaintiff, purchased Products labeled, marketed, and sold as containing "no artificial preservatives", from a CVS located in Schaumburg, Illinois.

24.     Plaintiff saw and relied on the "No Artificial Preservatives" claim on the labels of the Products when making their purchases.

25.     Plaintiffs, and reasonable consumers, understand that products labeled as containing "no artificial preservatives" will not contain any artificial preservatives.

26.     Reasonable consumers, and Plaintiffs, understand the term artificial based on common parlance, such that "artificial' means "made by people."[17]

27.     Reasonable consumers, and Plaintiffs, understand the term preservative based on common parlance, such that "preservative" means "a chemical used to stop food from decaying".[18]

28.     The "No Artificial Preservatives" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-

---

[16]     *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld
[17]Cambridge English Dictionary, s.v. "artificial," accessed November 21, 2023, https://dictionary.cambridge.org/us/dictionary/english/artificial.
[18]     Cambridge English Dictionary, s.v. "preservative," accessed November 21, 2023, https://dictionary.cambridge.org/us/dictionary/english/preservative.

from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[19]

29.     Recent published consumer research[20] surveying over 400 consumers concluded: "The significance of naturalness has crucial meaning for consumers nowadays. They prefer food free from preservatives, additives or artificial ingredients for perceived naturalness of foods."

30.     Plaintiff and the Class Members expected to receive artificial preservative free Products that would allow them to avoid the potential adverse health effects of consuming artificial preservatives.

31.     The Products are of inferior value and quality as delivered compared to as promised to Plaintiff and the Class Members because they contain artificial preservatives when they were labeled as containing no artificial preservatives.

32.     As a result, Plaintiff and the Class Members have been deprived the benefit of the bargain to avoid artificial preservatives in their purchase and have been deprived of the value they paid to Defendant for that benefit.

33.     Plaintiff and the Class Members would not have purchased the Products in lieu of other products without viewing the deceptive "no artificial preservatives" labeling.

34.     Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

---

[19] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/
[20] Guzik P, Szymkowiak A, Kulawik P, Zając M. *Consumer Attitudes towards Food Preservation Methods*. FOODS. 2022 May 6;11(9):1349.

35.    By making false and misleading claims about the contents of its Products, Defendants impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

36.    Therefore, Plaintiffs have been deprived of their legally protected interest to obtain true and accurate information about his consumer products as required by law.

37.    Plaintiff purchased the Products for $9.99 receiving 80 grams of electrolyte mix per Product. This equates to $0.12 per gram of Product.

38.    Plaintiff and reasonable consumers would not have purchased the Products at that price or would have purchased other competing products in lieu of Defendant's Products had they known the Product's "no artificial preservatives" labeling was fraudulent.

39.    CVS sells competing electrolyte products without "no artificial preservatives" labeling for lower prices around $0.11 per gram of product.[21]

40.    As a result of Defendants' fraudulent labeling, Plaintiffs and the Classes have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would not contain artificial preservatives so Plaintiffs and reasonable consumers could avoid the potential negative effects of consuming them.

41.    As a result of Defendants' fraudulent labeling, Plaintiffs and the Classes paid a price premium for premium Products, but instead received non-premium Products.

42.    Plaintiffs and the Classes purchased Defendants' Products because Defendants' advertising claimed that the Products did not contain artificial preservatives.

---

[21]    Gatorlyte    Rapid    Rehydration    Powder    Orange,    10    PK,    CVS, https://www.cvs.com/shop/gatorlyte-rapid-rehydration-powder-orange-10-pk-prodid-567088 (last visited Feb. 27, 2025);

43. Furthermore, due to Defendants' intentional, deceitful practice of falsely labeling the Products as containing "no artificial preservatives", Plaintiffs could not have known that the Products contained artificial preservatives.

44. Plaintiff was unaware that the Product contained artificial preservatives when she purchased it.

45. The following are examples of Defendant's misleading labels:




46. Worse than the lost money, Plaintiff and the Class Members were deprived of their protected interest to choose the type and quality of products they ingest.

47. Defendant, and not Plaintiff or the Class Members, knew or should have known that labeling, marketing, and selling the Products as containing "no artificial preservatives" was false, deceptive, and misleading, and that Plaintiffs and the Class Members would not be able to

tell the Products they purchased contained artificial preservatives unless Defendants expressly told them.

48. On information and belief, Defendants did know that Products contained artificial preservatives but chose to label the Products with "no artificial preservative" labeling because it did not believe its customers were well educated enough to know the difference.

49. On information and belief, Defendants employ professional chemists to create the chemical formulas of the Products, therefore, Defendants through their employees knew or should have known that citric acid, sodium citrate, potassium citrate, and magnesium citrate retard the deterioration of food products and are therefore chemical preservatives.

50. As a result of Defendants' acts and omissions outlined above, Plaintiff have suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

      a.    Lost money;

      b.    Wasting Plaintiffs' time; and

      c.    Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

51. Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

52. Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of a proposed sub-class (the "Illinois Sub-Class"), defined as follows

> All persons within the State of Illinois who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

53. Defendant, its employees and agents are excluded from the Class and Sub-classes. Plaintiffs do not know the number of members in the Classes, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

54. The Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believes and thereon alleges that the Classes include thousands, if not millions of members. Plaintiffs allege that the classes members may be ascertained by the records maintained by Defendants.

55. This suit is properly maintainable as a class action pursuant to the Illinois Code of Civil Procedure because the Classes are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

56. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a. Whether Defendants disseminated false and misleading information by claiming the Products contained "no artificial preservatives";

b. Whether the Class and Sub-Class members were informed that the Products contained artificial preservatives;

12

    c.   Whether the Products contained artificial preservatives;

    d.   Whether Defendants' conduct was unfair and deceptive;

    e.   Whether Defendants unjustly enriched itself as a result of the unlawful conduct alleged above;

    f.   Whether there should be a tolling of the statute of limitations; and

    g.   Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

57.    As residents of the United States and the States of Illinois who purchased the Products, Plaintiffs are asserting claims that are typical of the Classes.

58.    Plaintiffs have no interests adverse or antagonistic to the interests of the other members of the Classes.

59.    Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained attorneys experienced in the prosecution of class actions.

60.    A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class

member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

61. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

62. Plaintiffs' claims and injuries are identical to the claims and injuries of all class members, because all claims and injuries of all class members are based on the same false labeling and the same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendants when they claimed the Products contained "No Artificial Preservatives" when in reality the Products contained artificial preservatives.

63. Defendants have acted or refused to act in respect generally applicable to the Classes thereby making appropriate final judgement with regard to the members of the Class and Sub-Classes as a whole.

64. Defendants failed to comply with the requirements of the law as to the Classes with respect to the above-alleged transactions.

**COUNT I**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, _et seq._**

65. Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 55 above as if fully reiterated herein

66. Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as She is a natural person.

67. Defendant IS a "person" as defined in 815 ILCS 505/1(c), as it is a company and business entities and/or associations.

68.     815 ILCS 505/2 states:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

69.     Through its representations that the Products contained "No Artificial Preservatives" Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

70.     815 ILCS 505/10a states:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

(c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

71.     In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

72.     Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

73. By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.  An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representatives of the Class and the Sub-Classes;

b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.  Judgment against Defendants in an amount to be determined at trial;

e.  An order for injunctive relief prohibiting such conduct by Defendants in the future;

f.  Judgment against Defendants for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g.  Any other relief deemed just and proper by this Court.

**COUNT II**
**COMMON LAW FRAUD**

74. Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 55 above as if fully reiterated herein.

75. Through its false statements that the Products contained "No Artificial

16

Preservatives", Defendants made false statements of material fact.

76.     At the time Defendants made their statements to Plaintiff that the Products did not contain artificial preservatives, they knew, or reasonably should have known, that the statements described above were false.

77.     At the time Defendants made the statements to Plaintiff, Defendant intended to induce Plaintiff to purchase the Products.

78.     Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products they purchased contained artificial preservatives.

79.     As a result of their reasonable reliance upon Defendants' false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Classes have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendants as follows:

a.  An order certifying the Class and the Sub-Classes and appointing Plaintiffs as Representatives of the Class and the Sub-Classes;

b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.  Judgment against Defendants in an amount to be determined at trial;

17

e. An order for injunctive relief prohibiting such conduct by Defendants in the future;

f. Judgment against Defendants for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

## COUNT III
## UNJUST ENRICHMENT

80. Plaintiffs incorporates all of the allegations and statements made in Paragraphs 1 through 55 above as if fully reiterated herein.

81. Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

82. Defendants have been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products contained "No Artificial Preservatives".

83. Defendants' retention of the revenue it received from Plaintiffs, and the Class and Sub-Class members, is unjust and inequitable because Defendants' false statements caused injuries to Plaintiff, and the Class and Sub-Class members, as they would not have purchased the Products, or would not have paid a premium price, if they knew the Products contained artificial preservatives.

84. Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class and Sub-Classes members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendants for the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment against Defendants as follows:

18

a. An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representatives of the Class and the Sub-Classes;

b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendants in an amount to be determined at trial;

e. An order for injunctive relief prohibiting such conduct by Defendants in the future;

f. Judgment against Defendants for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of her claims in this action.

RESPECFULLY SUBMITTED,

CHRISTINE SLOWINSKI

/s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Phone: (224) 218-0875
Steven.perry@toddflaw.com

/s/ Todd M. Friedman
Attorney for Plaintiff
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd., #340
Woodland Hills, California 91364
Phone: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 11, 2025March 11, 2025, a copy of the foregoing First Amended Class Action Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steven G. Perry
Attorney for Plaintiff
